Smith, J.
It appears that the prisoner had been indicted, as principal in the same indictment with one Lewis D. Yancy as accessary, and for the same , . . * . . v " . , murder; but they were tried separately, and on different days. Both verdicts were written on the indictment, one guilty, and the other not guilty, without naming the person tried in either verdict, The counsel for the prisoner contended, that this was a fatal exception, because it did not appear which of the prisoners the jury intended to find f J J guilty, and which to acquit. But from an authenticated transcript of the minutes of the court of sessions, in which it was stated that Samuel Yancy the principal, was tried on the 13th, and by the ver-diet of the jury found guilty. And on the next day Lewis jD. Yancy was tried, and the verdict was not guilty. This was not leaving the guilty person to be guessed at, but he was manifested by a record, made under all the solemnity and sanction of law. And, therefore, that ground cannot serve the prisoner. u That the indictment did not state the jurors to he good and lawful men of the district.” This was another ground on which the counsel for the prisoner seemed very much to rely. This *238 ^ave been a sufficient ground under the English law, regulating the impannelling of jurors. There it was made the duty of the sheriff of the county to return a panel of jurors liberos et legales hominus de vicinato, that is freeholders, without just exception, and of the visne or neighbourhood; which is interpreted to be of the county where the fact is committed. (4 Black. Com. 349.) There was no test previous to the trial, of the qualification or goodness of the jurors. The sheriff had no sort of check whatever upon him, until after the panel was returned. He might have summoned jurors, who resided out of the county ; or who were not freeholders. This might have passed unknown until aftér conviction. And this might have been the earliest moment for correcting it. But by the various acts of our own state legislature, relative to the empan-nelling jurors, it is done under so many guards and checks, that these exceptions can never prevail. In the first place, the tax collector is commanded to make his return for the district, the preceeding year to the sheriff, and the judge or judges attending at the court, shall cause to be transcribed, the names of such persons, who are entitled by the constitution of this state, to vote for members of the state legislature, and shall put their names in the manner prescribed by law, into the division of the jury box, &e. {Act of Assembly, 1799.) And the law requires, that at least once in every three years this course' shall be renewed. From this box, at each court, the presiding judge shall cause forty-eight names to be drawn, by a child under the age *239 of ten years, whose tender mind is perfectly incapable of any thing like corruption, in selecting any particular names &e. And this precautionary course is pursued, until the trial is had. And furthermore, all these officers from first to last, concerned in every stage in drawing the juries, are by law specially required, to do it under the obligation of a particular oath, in addition to the solemn oath of office. Now under all this strictness, and precaution, it could scarcely be deemed essential to the safety of the prisoner, that the particular words (i good and lawful men” should be set forth in the indictment. I am not only of opinion that it is perfectly unnecessary to set out these words in the indictment, but 1 should deem them superfluous, and believe that setting forth in the indictment the im-pannelling the jury, in pursuance of the acts of the legislature, is more conformable to good sense, and equally safe, at least, for the prisoner.
On the ground of the jury amending their verdict three days after returning it, I think the case can-hot be altered. I think the rules of law would not authorise it; but I at the same time believe it was only redundant, and that the verdict stood in need of no such aid, as it was sufficiently explicit from, the records of the court then existing. li That the indictment against the defendant, concludes against the peace, and dignity of this state, instead of the state aforesaid, or the same state.”'
*240 This ground was much insisted on by the prisoner’s counsel. It was argued, that this was a constitutional provision, intended for the security of the prisoner that the state of South-Carolina should be so clearly identified that it could not be in any wise doubtful whether the offence, with which the prisoner should be charged, was committed against this state, or any other state. This part of the constitution, which is in the following words. “ The style of all process shall be; The State of South-Carolina. All prosecutions shall be carried on in the name, and by the authority of the state of South-Carolina, and conclude against the peace, and dignity of the same,” will admit of a latitude of construction. And the true sense and meaning appears to be, that all process shall conclude against the peace and dignity of the state of South-Carolina, either in express words, or in such other words that must have an undeniable reference to the state of South-Carolina j and the expressions, “ The Same,” are only the relative to the antecedentCi South-Carolina, and if expressed in other words, which cannot be mistaken in their meaning, as “ this State,” in the same writing or indictment, and at the conclusion thereof, after the style of the process had commenced in the constitutional words, u the State of South-Carolina,” would appear to be all that the fair construction, and good sense of this clause should' require. Therefore the motion must be overruled.
Justices Brevard, Bay, and Colcock concurred.